DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

_____
                                    )
**KEVIN SIMPSON,**                  )
                                    )
                                    )
    v.                              )   Civil No. 2011-056
                                    )
                                    )
**BETTEROADS ASPHALT**              )
**CORPORATION,**                    )
                                    )
        **Defendant.**              )
_____)

**Attorneys:**

**Thomas Alkon, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Wilfredo A. Géigel, Esq.,**
**Eugenio W.A. Géigel-Simounet, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION

THIS MATTER came before the Court on Defendant's "Motion to Exclude Plaintiff's Expert" (Dkt. No. 37), which was filed on April 22, 2013; Plaintiff's Opposition thereto (Dkt. No. 39), which was filed on May 1, 2013; and Defendant's Reply (Dkt. No. 47), which was filed on May 7, 2013. For the reasons that follow, the Court will grant Defendant's Motion.

### I. BACKGROUND

Plaintiff Kevin Simpson brought this negligence action to recover damages for personal injury allegedly sustained on May 21, 2010, during his employment with NR Electric, Inc. ("NR Electric"), a subcontractor of Defendant Betteroads Asphalt Corp. ("Betteroads"). Betteroads

was the principal construction contractor for the Christiansted Bypass, a highway on St. Croix, United States Virgin Islands.

At the time of Plaintiff's injury, he allegedly was operating a compactor machine to compact backfill in a trench previously excavated to place underground conduits for electrical lines. Plaintiff claims that there was a stone beneath the surface of the backfill, and that the compactor "bolted," "jerked up," or "buck[ed]" when it passed over the stone, causing Plaintiff "to suddenly lose his balance, twist and contort his body resulting in a severe injury to his back." (*See* Compl., Dkt. No. 1 ¶ 15; Dkt. No. 39 at 3). Plaintiff alleges that Betteroads "was negligent in not ordering the entire trench emptied, and refilled with rock free dirt prior to ordering any compacting and thus eliminat[ing] the danger described above." (Compl., Dkt. No. 1 ¶ 17(b)). According to Plaintiff, his injury was "directly caused by [Defendant's] negligence in exercising its control over all details of all work done on the site including work done by contractors." (*Id.* ¶ 16).

Plaintiff retained an expert, Rosie Mackay, P.E., to provide engineering and safety opinions on his behalf. (*See* Dkt. 24 at 1). In connection therewith, Ms. Mackay prepared a "Safety Expert's Report," which was delivered to Defendant on January 18, 2013. (Dkt. No. 31). By the instant Motion, Defendant seeks to exclude the testimony of Ms. Mackay, arguing that her conclusions are "contradictory and unsupported by any scientific basis" and should be excluded under Rules 403 and 702 of the Federal Rules of Evidence. (*See* Dkt. No. 37 at 2). Plaintiff opposes Defendant's Motion. (*See* Dkt. No. 39).

## II. LEGAL PRINCIPLES

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

2

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

District courts are obligated to ensure that expert testimony is both relevant and reliable. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012) ("Federal Rule of Evidence 702, as amended in 2000 to incorporate the standards set forth in *Daubert*, imposes an obligation upon a district court to ensure that expert testimony is not only relevant, but reliable."). Under Rule 702, district courts act as "gatekeepers" to ensure that proffered expert testimony is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *ZF Meritor*, 696 F.3d at 290 (internal quotation marks omitted) (quoting *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147 (1999); *Gen. Elect. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Barnes v. Century Aluminum Co.*, Civ. No. 2005–062, 2013 WL 1741707, at *1 (D.V.I. Apr. 23, 2013). In this regard, district courts "are vested with broad discretion in making admissibility determinations." *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006); *see also United States v. Gibbs,* 190 F.3d 188, 211 (3d Cir. 1999) ("The trial judge has broad discretion to admit or exclude expert testimony, based upon whether it is helpful to the trier of fact.").

As the Third Circuit has explained, Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). An expert is qualified if he or she possesses "specialized expertise." *Schneider*, 320 F.3d at 404. To establish reliability, the testimony "must be based on

3

the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief." *Id.* (citations and internal quotation marks omitted); *see also Calhoun*, 350 F.3d at 321. To satisfy the fit requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404; *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact."). The party proffering expert testimony bears the burden of demonstrating by a preponderance of the evidence that the expert's opinions are reliable and that the testimony satisfies the requirements of Rule 702. *See Daubert*, 509 U.S. at 592 n.10; *Mercedes-Benz USA, Inc. v. Coast Auto. Group, Ltd.*, 362 F. App'x 332, 335 (3d Cir. 2010); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994); *Virgin Islands v. Jacobs*, Crim. No. 2001–65, 2001 WL 1735083, at *2 (D.V.I. Dec. 28, 2001).

     A party seeking to present testimony of an expert witness under Rule 702 must disclose to the other parties the identity of the witness as well as a written report prepared and signed by the witness. *See* Fed. R. Civ. P. 26(a)(2)(A)–(B). The expert report must contain, *inter alia*: (1) "a complete statement of all opinions the witness will express and the basis and reasons for them"; and (2) "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). These requirements allow an opposing party to fully evaluate the expert's opinion before trial, preventing a party from "ambushing" an opponent at trial with previously undisclosed expert opinions. *See Muhsin v. Pac. Cycle, Inc.*, No. 2010-060, 2012 WL 2062396, at *3 (D.V.I. June 8, 2012). Expert reports must not contain mere conclusory opinions, but must

include "how" and "why" the expert reached those particular conclusions. *Id.* (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)). They must present facts; must "outline a line of reasoning from a logical foundation;" and must not simply rely on "cursory support" for conclusions. *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (internal quotation marks omitted); *see also ZF Meritor*, 696 F.3d at 290 (an expert opinion must be "supported by sufficient facts") (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)).

### III. DISCUSSION

As noted above, Federal Rule of Evidence 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider*, 320 F.3d at 404. For the purposes of ruling on Defendant's Motion, the Court will assume, without deciding, that Ms. Mackay meets the first requirement and is qualified to give expert testimony as a safety engineer. The Court therefore proceeds to examine Ms. Mackay's "Expert Opinion" (Dkt. No. 37-1), in order to determine whether the proffered testimony "require[es] scientific, technical or other specialized knowledge" and would "assist the trier of fact" in this matter. The Court concludes that the expert testimony proffered by Plaintiff does neither.

Ms. Mackay's expert report contains nine sections: (1) an introduction listing the items examined to prepare the report; (2) a "Background" section describing the events of May 21, 2010; (3) a "Data" section briefly summarizing three sections of the Virgin Islands Code, defining the Occupational Safety and Health Act (OSHA), and providing the OSHA definitions of a "competent person," "hazardous atmosphere," and "protective system;" (4) a "Requirements of the Contract" section summarizing or excerpting contractual provisions; (5) a "Deposition Testimony" section summarizing the depositions of Plaintiff Simpson, Ashfield Skepple (a

5

supervisor for NR Electric), and Pedro Santana (a supervisor for Defendant Betteroads); (6) a section briefly summarizing excerpts from "Weekly Progress Construction Meeting Minutes;" (7) a section reviewing the preliminary "Expert Report of Mr. Roger Currier, IV, P.E.";[1] (8) a "Discussion" section containing Ms. Mackay's findings; and (9) a "Conclusion" section. (Dkt. No. 37-1 at 1–8). After examining each section of the expert report, the Court finds that Plaintiff has not met his burden of demonstrating that the proffered testimony satisfies the requirements of Rule 702. *See Daubert*, 509 U.S. at 592 n.10; *Pineda*, 520 F.3d at 244.

Five of the nine sections—sections (1), (2), (4), (5), and (6)—consist solely of background facts, data, summaries, and assumptions considered by Ms. Mackay in forming her expert opinions. Although this background information could serve as the underlying data for Ms. Mackay's analysis and conclusions,[2] it is not independently admissible as expert testimony. Indeed, Ms. Mackay's summary of what she deems to be the "facts" of the case does not "requir[e] scientific, technical or other specialized knowledge." *See Pineda*, 520 F.3d 237 at 244. The introduction by way of expert testimony of such "facts"—which are to be developed and established by other evidence and testimony and determined by the jury—would impermissibly substitute Ms. Mackay's judgment for that of the jury. *See, e.g.*, *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996); *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995) ("[A]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility."). Therefore, these sections of Ms. Mackay's report are not independently admissible under Rule 702. *See, e.g.*, *Filing v. Phipps*,

---

[1] Ms. Mackay was retained as an expert after the death of Plaintiff's first expert, Roger Currier, P.E. (*See* Dkt. No. 24 at 1).

[2] *See, e.g.*, Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring an expert report to include "the facts or data considered by the witness in forming" the witness's opinions); Fed. R. Civ. P. 702(b) (requiring that expert testimony be "based on sufficient facts or data").

No. 11–4157, 2012 WL 5200375, at *3 (6th Cir. Oct. 23, 2012) (trial court did not abuse its discretion in excluding expert testimony that did not require specialized knowledge). The Court thus turns to examine the remaining four sections of her expert report: sections (3), (7), (8), and (9).

The third section, "Data," summarizes three sections of the Virgin Islands Code and describes certain definitions under the OSHA standards. (Dkt. No. 37-1 at 3). As it is described in the report, V.I. CODE ANN. tit. 24, § 31(b) mandates that the Virgin Islands should protect its workers and citizens by regulating and enforcing rules in places of employment "by formulating and adopting such a State Plan (OSHA)." (*Id.*). According to Ms. Mackay's report, 24 V.I.C. § 35(a) requires employers to provide their employees with "a safe place of employment free from recognized hazards that are causing or likely to cause death or serious physical harm to [their] employees," and 24 V.I.C. § 35(c) requires that places of employment shall comply with the "Safety and Health Standards, and all rules, regulations, and orders pursuant to [OSHA]." (*Id.*). This section also provides definitions under the OSHA Standards for a "competent person," a "hazardous atmosphere," and a "protective system." *Id.*[3]

The inclusion of these legal citations does not aid Plaintiff's cause. Merely reciting these OSHA definitions,[4] along with sections of the Virgin Islands Code, does not provide any analysis involving "scientific, technical, or other specialized knowledge" that would "help the

---

[3] According to Ms. Mackay's report, the OSHA Standards define: (1) a "competent person" as "one who is capable of identifying existing and predictable hazards in the surroundings, and who has the authorization to take prompt and corrective measures to eliminate them"; (2) a "hazardous atmosphere" as "an atmosphere which by reason of being, among other things, harmful, which may cause death, illness or injury"; and (3) a "protective system" as any system that provides the necessary protection." (*Id.*).

[4] In her deposition, Ms. Mackay conceded that she has not provided any particular OSHA regulation that applies specifically to the size of backfill material. (Mackay Dep., Dkt. 39-4 at 2).

trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Indeed, "[a]s a general rule an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Here, the statement of general legal standards by an expert would seem to impermissibly "usurp . . . the role of the trial judge in instructing the jury as to the applicable law." *See Nimely*, 414 F.3d at 397 (quoting *Bilzerian*, 926 F.2d at 1294) (quotation marks and alteration omitted).

The substance of Ms. Mackay's analysis and conclusions is contained in the final three sections of her report—sections (7), (8), and (9), entitled "Expert Report of Mr. Roger Currier, IV, P.E," "Discussion," and "Conclusion," respectively. (*See* Dkt. No. 37-1 at 6–8). However, as discussed below, these sections—in conjunction with the preceding sections as background—also fail to satisfy the requirements of Rule 702.

The seventh section of the report reviews the preliminary "Expert Report of Mr. Roger Currier, IV, P.E." (Dkt. No. 37-1 at 6). In this section, Ms. Mackay agrees with Mr. Currier's conclusions that Betteroads had the responsibility to deliver the project in compliance with the contract's technical specifications, and that Betteroads directed and supervised NR Electric's day-to-day activities and work. *Id.* These fact-based conclusions do not require any scientific, technical, or specialized knowledge so as to warrant expert testimony. Rather, the nature of these conclusions suggests that they are based on Ms. Mackay's subjective beliefs and her assessments of the deposition testimony of certain fact witnesses, which fall squarely within the province of the jury. *See Sheridan*, 100 F.3d at 1072 (the "[e]valuation of witness credibility is the exclusive function of the jury") (citation omitted); *Westcott*, 68 F.3d at 1076.

The eighth section is the "Discussion" section, containing Ms. Mackay's findings. (Dkt. No. 37-1 at 6–7). The first paragraph of the Discussion repeats the conclusions described in the

8

previous section examining Mr. Currier's preliminary expert report, which the Court has addressed above. The second paragraph notes that, although the contract had a particle size limit of 1.5 inches for the backfill, Betteroads required NR Electric to bring in a "sieve for classification of fill material with material not greater than 3 inches." (Dkt. No. 37-1 at 6). This paragraph simply compares the contractual requirements with a statement in the minutes of a meeting; it is devoid of any analysis based on "scientific, technical, or other specialized knowledge" to aid the jury in understanding or determining a fact at issue. *See* Fed. R. Evid. 702(a).

In the final three paragraphs of the Discussion section, Ms. Mackay states that: (1) Betteroads had come to supervise the placement of the backfill; (2) Plaintiff became accustomed to relying on Betteroads to ensure that the backfill was the correct material; (3) on the date in question, Plaintiff was instructed by his supervisor to perform compaction at maximum speed; (4) the compactor hit a large rock, causing the machine to lurch and causing an injury to Plaintiff's back; and (5) after the injury, Plaintiff noticed a large chunk of rock in the trench, indicating that the backfill had not been sifted properly. (Dkt. No. 37-1 at 6–7). These are fact and credibility determinations that do not rely on any scientific analysis. Simply stated, they invade the province of the jury and are not proper expert testimony. *See* Fed. R. Evid. 702(a), 702(b)–(d); *Schneider*, 320 F.3d at 404; *Sheridan*, 100 F.3d at 1072; *Westcott*, 68 F.3d at 1076; *see also Daubert*, 509 U.S. at 592 n.10; *Mercedes-Benz*, 362 F. App'x at 335.

Finally, the ninth section—the report's "Conclusion"—lacks any additional analysis that would make the testimony appropriate under Rule 702. (*See* Dkt. No. 37-1 at 7–8). The first paragraph reiterates Ms. Mackay's conclusion that Betteroads took responsibility for supervising NR Electric's trenching operations. The second paragraph repeats that Betteroads required a 3-

inch sifter, which did not meet the 1.5-inch standard required in the contract. Each of these opinions and statements has been addressed above.

The third and fourth paragraphs summarize Ms. Mackay's version of the events of May 21, 2010, finding that Betteroads failed to properly check the backfill and that this failure created a risk of harm to Plaintiff. Further, Ms. Mackay states in the fourth paragraph that the Betteroads supervisor instructed Plaintiff to continue compacting despite Plaintiff indicating that something was wrong, demonstrating a lack of care. (Dkt. No. 37-1 at 7). Thus, the third and fourth paragraphs constitute conclusions based on Ms. Mackay's subjective beliefs, rather than the methods and procedures of science. These paragraphs offer no "scientific, technical, or other specialized knowledge," nor any "reliable principles and methods," that would help the jury to determine whether Defendant's actions created a risk of harm or demonstrated a lack of reasonable care. *See* Fed. R. Evid. 702.

In the final two paragraphs of the Conclusion, Ms. Mackay states her opinion that "on May 21, 2010, Betteroads provided a hazardous atmosphere, devoid of a protective system, which exposed Plaintiff to a risk of injury by failing to have a competent person or persons inspect the trench and backfill material as they had previously required of themselves, and which they had taught NR Electric to expect." (Dkt. No. 37-1 at 8). The mere injection of OSHA terms into an otherwise garden-variety negligence analysis—unaccompanied by any scientific analysis or any reflection of scientific, technical, or other specialized knowledge—does nothing to elevate Ms. Mackay's opinion to one that meets the requirements of Rule 702.[5]

---

[5] Defendant also seeks to exclude Ms. Mackay's testimony under Rule 403 of the Federal Rules of Evidence. The Court agrees that any probative value that Ms. Mackay's testimony may have would be substantially outweighed by its prejudicial effect. *See* Fed. R. Civ. P. 403. In view of the absence of any scientific, technical or specialized knowledge underlying the proffered testimony, together with the heavy reliance on witness testimony, "the expert's 'stamp of

10

### IV. CONCLUSION

After examining the expert report, the Court finds that Plaintiff has not met his burden of demonstrating that the proffered testimony satisfies the requirements of Rule 702. *See, e.g.*, Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592 n.10; *Pineda*, 520 F.3d at 244. *Schneider*, 320 F.3d at 404; *Muhsin*, 2012 WL 2062396, at *3. Accordingly, the expert testimony of Ms. Mackay will be excluded from trial.

An appropriate Order accompanies this Memorandum Opinion.


Date: May 18, 2013                                              _____/s/_____
                                                                WILMA A. LEWIS
                                                                District Judge

---

approval'" on certain witness testimony "may unduly influence the jury." *See United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991).