## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

———————————————————— )
KEVIN SIMPSON,                          )
                                        )
                                        )
                      Plaintiff,        )
                                        )
                                        )
          v.                            )          Civil No. 2011-056
                                        )
                                        )
BETTEROADS ASPHALT                      )
CORPORATION,                            )
                                        )
                      Defendant.        )
———————————————————— )

**Attorneys:**
**Thomas Alkon, Esq.,**
St. Croix, U.S.V.I.
        *For the Plaintiff*

**Wilfredo A. Géigel, Esq.,**
**Eugenio W.A. Géigel-Simounet, Esq.,**
St. Croix, U.S.V.I.
        *For the Defendant*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

        THIS MATTER comes before the Court on Defendant's "Motion for Judgment as a Matter of Law and for a New Trial under F.R.C.P. 50(b) and 59," which was filed on June 11, 2013 (Dkt. No. 90); Plaintiff's Opposition thereto, which was filed on June 19, 2013 (Dkt. No. 92); and Defendant's Reply, which was filed on July 2, 2013 (Dkt. No. 94). For the reasons that follow, Defendant's Motion will be granted in part and denied in part.

1

## I. BACKGROUND

Plaintiff Kevin Simpson ("Simpson") brought this negligence action to recover damages for a personal injury allegedly sustained on May 21, 2010, during his employment with NR Electric, Inc. ("NR Electric"), a subcontractor of Defendant Betteroads Asphalt Corp. ("Betteroads").   Betteroads was the principal construction contractor for the Christiansted Bypass, a highway on St. Croix, United States Virgin Islands.   Betteroads hired NR Electric to lay underground electrical conduit along the Christiansted Bypass.

At the time of Plaintiff's injury, he allegedly was operating a compactor machine to compact backfill in a trench previously excavated to place underground conduits for electrical lines.   Plaintiff claims that there was a large stone beneath the surface of the backfill, and that the compactor "bolted," "jerked up," or "buck[ed]" when it passed over the stone, causing Plaintiff "to suddenly lose his balance, twist and contort his body resulting in a severe injury to his back." (*See* Compl., Dkt. No. 1 ¶ 15; Dkt. No. 39 at 3).   Plaintiff alleges that Betteroads "was negligent in not ordering the entire trench emptied, and refilled with rock free dirt prior to ordering any compacting and thus eliminat[ing] the danger described above."   (Compl., Dkt. No. 1 ¶ 17(b)).   According to Plaintiff, his injury was "directly caused by [Defendant's] negligence in exercising its control over all details of all work done on the site including work done by contractors."   (*Id.* ¶ 16).

The trial in this matter began on May 20, 2013.   Defendant moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a), at the close of Plaintiff's case-in-chief and again at the conclusion of the trial.   Defendant's motion was denied.   Following trial, on May 28, 2013, the jury returned a verdict in favor of Plaintiff.   (*See* Jury Verdict, Dkt. No. 84 at 1–3; Dkt. No. 87 at 1).   In its verdict, the jury found, by a preponderance of the

evidence, that: (1) Betteroads retained control over the manner in which part of the work entrusted to NR Electric was performed; (2) the negligence of Betteroads —with respect to the part of the work over which Betteroads retained control—was a cause of physical harm to Kevin Simpson; (3) Simpson was not negligent or such negligence was not a cause of his physical harm; (4) one-hundred (100) percent of the negligence was attributable to Betteroads, and zero (0) percent of the negligence was attributable to Simpson; and (5) Simpson was entitled to damages in the total amount of nine-hundred thousand dollars ($900,000.00). (*See* Jury Verdict, Dkt. No. 84 at 1–3). Following polling of the jurors, the jury's verdict was recorded as announced. (Dkt. No. 87 at 2). On June 11, 2013, Defendant filed the instant Motion, seeking either judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure or, in the alternative, a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. (*See* Dkt. No. 90 at 20).

## II. APPLICABLE LEGAL PRINCIPLES

### A.    Rule 50(b): Renewed Motion for Judgment as a Matter of Law

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a party which previously moved for judgment as a matter of law during trial under Rule 50(a) may renew its motion within 28 days after the entry of judgment. *See* Fed. R. Civ. P. 50(b).[1] Such a motion may be

---

[1] Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). When ruling on a renewed motion for judgment as a matter of law under

3

granted if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue." *See* Fed. R. Civ. P. 50(a)(1).

As the Third Circuit has explained, a motion for judgment as a matter of law should be granted "'only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.'" *Mulholland v. Gov't County of Berks, Pa.*, 706 F.3d 227, 237 n.14 (3d Cir. 2013) (quoting *Macleary v. Hines*, 817 F.2d 1081, 1083 (3d Cir. 1987)). Reviewing all the evidence in the record, the Court must draw all reasonable inferences in favor of the nonmoving party. *See Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 492 (3d Cir. 2002) (stating that a motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability"); *Murphy v. City of Philadelphia Dept. of Recreation*, 07-CV-4104, 2011 WL 3652480 at *2 (E.D. Pa. Aug. 19, 2011) ("[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party"). In evaluating the sufficiency of the evidence, "the Court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Ambrose*, 303 F.3d at 492; *see also Murphy*, 2011 WL 3652480 at *2 (noting that the court "may not make credibility determinations or weigh the evidence, as those are jury functions—not those of a judge").

Although motions for judgment as a matter of law "should be granted sparingly," the jury's verdict must be supported by more than a "scintilla" of evidence. *See Johnson v.*

---

Rule 50(b), the court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. *Id.*

*Campbell*, 332 F.3d 199, 204 (3d Cir. 2003).  "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict."  *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (quoted in *Johnson*, 332 F.3d at 204).  A Rule 50 motion should therefore be granted where "the record is 'critically deficient of the minimum quantum of evidence' upon which a jury could reasonably base its verdict."  *Pitts v. Delaware*, 646 F.3d 151, 155 (3d Cir. 2011) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009)).

**B.      Rule 59(a):  Motion for a New Trial or Remittitur**

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, a court may grant a motion for a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The authority of trial judges to grant new trials pursuant to Rule 59(a) "is large."  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996).  The Supreme Court has reaffirmed that federal district court judges have the "'discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.'"  *Id.* (quoting *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 540 (1958)).

The trial judge's Rule 59(a) discretion includes the authority to overturn verdicts for excessiveness, or to reduce the size of the verdict.  *See id.*  ("This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur).");  *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79 (1989) ("[T]he role of the District Court is to determine whether the jury's verdict is within the confines set by state law, and to

determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered.").

## III. Discussion

### A.    Rule 50(b):  Renewed Motion for Judgment as a Matter of Law

Evidence was presented at trial that would provide a reasonable jury with a legally sufficient evidentiary basis for reasonably determining that the Plaintiff met all of the elements for negligence.  *See* Fed. R. Civ. P. 50(a)(1).  "[I]n the Virgin Islands, the Third Restatement of Torts governs negligence claims."  *Smith v. Katz*, Civ. No. 2010–039, 2013 WL 1182074, at *11 (D.V.I. Mar. 22, 2013).  Under the Third Restatement, there are five elements of a prima facie case for negligently caused physical harm:  (1) duty; (2) failure to exercise reasonable care; (3) factual cause; (4) physical harm; and (5) harm within the scope of liability (historically called "legal cause" or "proximate cause").  Restatement (Third) of Torts:  Liability for Physical and Emotional Harm § 6 cmt. b.  Testimony and evidence were presented corresponding to each of these elements, including the testimony and evidence described below.

### 1.    Duty

While a hiring party (such as Betteroads) usually owes no duty as to the manner in which an independent contractor (such as NR Electric) performs its work, a hiring party *does* have a duty of reasonable care as to the exercise of any control it retains over any part of the work.  *See* Restatement (Third) of Torts:  Physical and Emotional Harm § 56(b).  Therefore, to establish a duty, Plaintiff was required to present evidence that Defendant Betteroads retained control over some part of the work it entrusted to NR Electric.  *See id.*

Plaintiff presented testimony by Kevin Simpson that Betteroads would inspect the trench and approve it, and decide whether NR Electric would have to rake the backfill to remove large

rocks. Simpson further testified that, after backfill had been laid down, a Betteroads supervisor or inspector would tell NR Electric and Plaintiff to either compact the soil, or to rake it first and take out the rocks. According to Simpson, from his first day at the jobsite until his last day on the job—May 21, 2010, the date of the injury—Betteroads always gave him the order to compact, and he was not permitted to compact unless Betteroads gave him such an order. Simpson testified that Betteroads personnel, including Mr. Pedro Santana (Vice-President of Betteroads) and Mr. Wilfredo Diaz (Quality Assurance Supervisor for Betteroads), would inspect and approve the backfilling work performed by NR Electric.

Simpson further testified that every morning, he and his coworkers would meet their NR Electric supervisor, Ashfield Skepple, off-site. According to Simpson's testimony, Skepple would drive them to the jobsite, but would not mention the day's work schedule during the trip. Skepple would drop the NR Electric workers at a shed at the jobsite, and he would then walk to the Betteroads office at the site. When he returned from the office, Skepple would review the day's work schedule and tasks with the NR Electric employees.

Plaintiff argued at trial that the foregoing evidence demonstrated that Betteroads retained control over the manner in which NR Electric performed its backfilling operations.

Defendant presented testimony and evidence in support of its position that Betteroads owed no duty as to the manner in which NR Electric performed its work. In Defendant's view, it did not retain control over any part of NR Electric's work, and the compacting operations that resulted in Simpson's alleged injury were the sole responsibility of NR Electric. In support of its position, Defendant presented, *inter alia*, the testimony of Simpson's supervisor at NR Electric, Ashfield Skepple. Mr. Skepple testified that he and NR Electric were responsible for all the trenching operations, including compacting the backfill, and that Betteroads did not direct the

7

manner in which NR Electric performed its work.  Defendant also introduced into evidence a packet of documents beginning with the title, "Notice of Subcontract Award – Supplemental Information."  (Def. Exh. 2 at 1).  Defendant contended at trial that these documents established that NR Electric, as a subcontractor to Betteroads, had the sole responsibility for trenching and backfill operations.

However, minutes of weekly construction meetings between Betteroads, NR Electric, and other subcontractors were introduced into evidence that provided some support for Plaintiff's position.  (Def. Exh. 4 at 1–4).  At trial, Plaintiff argued to the jury that these minutes demonstrated that Betteroads retained control over NR Electric's work.  For example, according to the minutes dated April 14, 2010 for a meeting that included Mr. Skepple and Urial Browne of NR Electric and Pedro Santana and Felix Rivera of Betteroads, one of the items discussed was that "NR Electric will get a sieve by April 15 for classification of fill material with material not greater than 3 inches."  (Def. Exh. 4 at 1).  The minutes dated April 21, 2010, for a meeting that included both NR Electric and Betteroads personnel, contain discussion items stating that "[n]o work is authorized without having personnel from [Betteroads];" "[a]ll fill material will be compacted in layers and tested for compaction greater than 95% prior to continue backfilling;" and "[l]ayers should be 6 inches or less."  (*Id.* at 4).  These discussion items constitute evidence from which the jury could reasonably infer that Betteroads retained control over the manner in which NR Electric performed its trenching and backfilling operations.

While Defendant presented some evidence to the contrary, such evidence was not conclusive and did not establish that there was "no question of material fact for the jury."  *See Mulholland*, 706 F.3d at 237 n.14; *see also Gomez*, 71 F.3d at 1083.  Rather, the testimony and evidence presented at trial pertaining to the issue of retained control called, *inter alia,* for the jury

to make credibility determinations, as it is in the province of the jury to do. *See Ambrose*, 303 F.3d at 492; *Murphy*, 2011 WL 3652480 at *2.   In sum, the evidence presented at trial— including the evidence summarized above—was sufficient for a jury to reasonably conclude that Betteroads retained control over the backfilling and compacting operations performed by NR Electric, and thus retained a duty of reasonable care as to the exercise of that control.   *See* Restatement (Third) of Torts:  Physical and Emotional Harm § 56(b); *see also Pitts*, 646 F.3d at 155.

> **2.      Failure to Exercise Reasonable Care**

Under the Third Restatement, "[a] person acts negligently if the person does not exercise reasonable care under all the circumstances."   Restatement (Third) of Torts:  Physical and Emotional Harm § 3.  Primary factors to consider in determining whether the person's conduct lacks reasonable care are the foreseeable likelihood that the person's conduct will result in harm, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm.  *See id.*; *see also id.* § 55 cmt. e.  A hiring party's negligence might include giving orders or directions to the independent contractor without exercising reasonable care; failing to exercise reasonable care to discover dangerous conditions on the land and to eliminate or ameliorate those that are known or should have been discovered by the exercise of reasonable care; or failing to exercise reasonable care with respect to any part of the work over which the actor has retained control.  *Id.* § 55 cmt. e.

Kevin Simpson testified that using a machine called a "sifter "to remove large rocks worked well, and removing the rocks made it easier to compact the soil.  According to Simpson's testimony, there was a large rock present in the backfill on the date of his alleged injury, and Betteroads should have ensured that this rock was removed prior to any use of the compactor to

compact the backfill.  Simpson testified that Betteroads generally inspected and supervised the backfill operations, but did not ensure that the material was properly sifted or raked on May 21, 2010, the date of Simpson's injury.  Simpson further testified that on the morning of the incident, he felt something was wrong with the backfill, and he sought instructions from a man he believed to be a Betteroads supervisor.  According to Simpson, he assumed that the man was a Betteroads supervisor, because the man was seated in a pick-up truck with a Betteroads sign on the door and was observing work being done by others on the jobsite.  Simpson testified that after he notified the man that something was wrong, the man ordered him to continue using the compactor in the trench, without first checking whether the worksite conditions were safe.  After the incident, Simpson observed many rocks strewn throughout the material.

Betteroads presented testimony to the contrary, including that of Mr. Skepple, who testified that he did not believe Mr. Simpson's account of his injury.  Specifically, Skepple testified that at the time of Simpson's alleged injury, Skepple left the jobsite briefly to get some water to wet the backfill for compaction.  When he returned approximately thirty minutes later, the compactor was outside the trench, in the same position as when he had left.  Skepple further testified that it did not seem that Simpson had done any compaction during that time, and that the "bucking" that Simpson said caused his injury could not have happened.  Pedro Santana, a Betteroads Vice-President, and Wilfredo Diaz, a Betteroads Supervisor, also testified that they did not direct NR Electric or Simpson in the performance of the trenching operations.  David Cintrón, Defendant's liability expert, testified that Betteroads did not retain control over the manner in which NR Electric performed its work, and that Betteroads did not fail to exercise reasonable care in overseeing the jobsite and NR Electric's work.

However, once again, Defendant's evidence did not conclusively refute Simpson's

testimony so as to demonstrate that there was "no question of material fact for the jury" as to whether Defendant failed to exercise reasonable care.  *See Mulholland*, 706 F.3d at 237 n.14; Restatement (Third) of Torts:  Physical and Emotional Harm § 3.  If the jury credited Simpson's testimony—as it was permitted to do—the jury could reasonably find (1) that the Betteroads supervisor failed to exercise reasonable care when he ordered Simpson to begin compacting despite being warned that something was wrong; or (2) that Betteroads failed to exercise reasonable care over the part of the work for which it retained control by not ensuring that the backfill material was free of large rocks and was safe for compacting.  *See* Restatement (Third) of Torts:  Physical and Emotional Harm § 55 cmt. E; *see also Ambrose*, 303 F.3d at 492; *Murphy*, 2011 WL 3652480 at *2.  Simpson's testimony thus provided a jury with a sufficient basis to reasonably find that Betteroads gave him an order without exercising reasonable care, or that Betteroads failed to exercise reasonable care over that part of NR Electric's work over which Betteroads had retained control.  *See id.*

### 3.     Factual Cause

Negligent conduct must be a factual cause of harm for liability to be imposed.  *See* Restatement (Third) of Torts:  Liability for Physical and Emotional Harm §§ 6, 26.  Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.  *Id.* § 26.

Simpson testified that a large rock caused his injury, and that Betteroads negligently failed to inspect the backfill prior to his compacting in order to ensure that such large rocks were not present in the material to be compacted.  He testified that when the compactor he was operating on May 21, 2010 passed over the large stone, the compactor bucked and jerked up, causing the machine's handle to move up and down forcefully.  Additionally, according to Simpson's testimony, after the compactor's roller struck the rock, the roller wheel skidded and

the compactor swerved towards the road.  Because Simpson was trying to hold onto the handle and control the compacting machine, the movement of the handle up and down, combined with the compactor veering towards the road, caused him to twist and contort his body, thus severely injuring his back.  Simpson testified that immediately thereafter, he experienced significant pain in his back and lower legs.  He noticed that that his legs were burning and in intense pain, which he described as feeling like he was being electrocuted or walking on hot coals.  He testified that after the incident, he could not continue working that day.  His supervisor, Ashfield Skepple, drove him away from the jobsite, and that was Simpson's last day of work at the jobsite.  According to Simpson, he later sought medical care for his back injury.

Simpson testified that Betteroads did not properly inspect the backfill, and after his injury, he noticed many rocks strewn throughout the material.  In Simpson's view, these rocks were too large, and it was one of the large rocks that caused the compactor to buck up, injuring his back.  Therefore, according to Simpson's testimony, the negligent conduct of Betteroads was a factual cause of the harm he suffered.  *See* Restatement (Third) of Torts:  Liability for Physical and Emotional Harm §§ 6, 26.

Defendant presented testimony from Mr. Skepple that was contrary to Simpson's account.  As described above, Skepple testified that he did not believe that Simpson was injured on the jobsite at all.  According to Skepple, Simpson's alleged injuries were not factually caused by any negligent conduct on behalf of Betteroads.  Further, Defendant presented medical testimony and exhibits suggesting that at least some of Simpson's back pain and injuries were the result of a pre-existing condition—namely, degenerative damage to the lower lumbar discs. (*See, e.g.*, Def. Exh. 10 at 1; Def. Exh. 13 at 1).

However, based on the evidence presented, a reasonable jury could permissibly credit the

12

testimony of Mr. Simpson over that of Mr. Skepple, and the evidence that there was a causal relationship between Defendant's conduct and Simpson's injuries, notwithstanding his pre-existing condition.   Such a credibility determination is within the province of the jury.   *See Ambrose*, 303 F.3d at 492; *Murphy*, 2011 WL 3652480 at *2.   The testimony of Simpson, if credited by the jury, was sufficient to establish that the negligence of Betteroads—in failing to ensure that the backfill material was free of large rocks—directly caused his back injury, because a large rock caused the compactor to "buck up," contorting Simpson's back as he attempted to control the compactor.   Therefore, with respect to factual cause, the record is not so "'critically deficient of the minimum quantum of evidence' upon which a jury could reasonably base its verdict."   *See Pitts*, 646 F.3d at 155 (quoting *Acumed LLC*, 561 F.3d at 211).

### 4.     Physical Harm

 "Physical harm" means the physical impairment of the human body ("bodily harm") or of real property or tangible personal property ("property damage").   Restatement (Third) of Torts:  Liability for Physical and Emotional Harm § 4.   Bodily harm includes physical injury, illness, disease, impairment of bodily function, and death.   *Id.*

Defendant presented testimony and documents showing that at least some of Simpson's back injuries were due to a pre-existing condition:  degenerative disc disease.   (*See, e.g.*, Def. Exh. 10 at 1; Def. Exh. 13 at 1).   Simpson's coworker at NR Electric, Jomar Encarnación, also testified that Simpson complained about his back and wore a back brace before the date of the alleged injury.   However, this evidence does not conclusively prove that Plaintiff did not suffer any physical harm.   *See, e.g.*, *Gomez*, 71 F.3d at 1083 ("The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.").

Supporting the element of physical harm, Plaintiff presented medical records—including reports and notes from Walter J.M. Pedersen, Jr., M.D. (an orthopedic surgeon practicing on St. Croix since 1983) and Anthony P. Moreno, M.D. (an orthopedic spine surgeon)—describing his symptoms, diagnosis, and treatment for his back injury.  (*See* Pl. Exh. 4).   Additionally, as described above, Simpson testified that his back was injured on the jobsite on May 21, 2010, and that immediately after the incident, he experienced intense pain in his back and lower legs. Simpson also testified that he subsequently sought medical care for his back injury.

Plaintiff also presented the testimony of Dr. Pedersen regarding Plaintiff's back injuries. Dr. Pedersen testified that he made a report that Plaintiff had a back strain injury, and that Simpson told Dr. Pedersen that a machine jumped up on a certain date, causing his injury. According to Dr. Pedersen, Simpson's back problems and leg pain constituted a red flag, in that he was complaining of pain distant from the location of the actual pathology.  This red flag—and the failure of pain management and injection therapy—factored into Dr. Pedersen's decision to refer Plaintiff for back surgery.  After Simpson completed the recommended back surgery in Florida, Dr. Pedersen recommended that Simpson not return to hard manual labor, due to his injuries.

Plaintiff also presented the testimony of his fiancée, Ms. Rachel Winslow, regarding the nature and extent of his injuries.  Ms. Winslow testified that there are days when Simpson is very uncomfortable, and other days when he is not.  According to her, Simpson would like to be more active in daily life and be able to do things with her, but some days he cannot get out of bed.  If the couple does "too much" on a Saturday, they "lose" Sunday due to Simpson's back injuries.

Given all the evidence presented at trial on this issue—including medical testimony and reports by doctors who treated or examined Plaintiff, and Simpson's own testimony and that of

his fiancée—a jury could reasonably conclude that Simpson suffered physical harm. *See Ambrose*, 303 F.3d at 492.

### 5.    Harm Within the Scope of Liability

The fifth element of negligence is "harm within the scope of liability," which historically was called "legal cause" or "proximate cause." Restatement (Third) of Torts:  Liability for Physical and Emotional Harm § 6 cmt. b.[2]  An actor's liability is limited to those harms that result from the risks that made the actor's conduct negligent. *See id.* § 6 cmt. f; *id.* § 29.  Thus, in deciding whether a plaintiff's harm is within the scope of liability, a jury should go back to their reasons for finding that the defendant engaged in negligent conduct. *Id.* § 29 cmt. d.  If the harms risked by that negligent conduct include the general sort of harm suffered by the plaintiff, then the defendant is subject to liability for the plaintiff's harm. *Id.*

Although scope of liability is an element of a *prima facie* case, it is almost never necessary to demonstrate facts beyond those that establish the other elements. *See id.* § 29 cmt. a.  In most cases, the facts that establish the other elements make it self-evident that the plaintiff's harm is within the defendant's scope of liability, and no further analysis is required. *See id.*

The testimony and evidence cited in the preceding analysis of the first four elements of negligence—duty, failure to exercise reasonable care, factual cause, and physical harm—would provide a reasonable jury with a legally sufficient evidentiary basis for determining that Plaintiff's harm is within the scope of Defendant's liability.  The testimony presented at trial could provide the basis for a determination by a reasonable jury that the harms risked by

---

[2] The Third Restatement intentionally omits "legal cause" or "proximate cause" terminology, because they are "especially poor [terms] to describe the idea to which [they are] connected." *See id.*, ch. 6, intro. Note, "Special Note on Proximate Cause."

Defendant's negligence—by failing to ensure that the backfill was free of large rocks, and by ordering Plaintiff to continue compacting after learning that something was wrong—include the sort of bodily harm suffered by Plaintiff.  Leaving large rocks in the backfill could create a risk of back injury to a worker compacting that backfill.

### 6.      Conclusion

For the foregoing reasons, the Court concludes that, when viewed in the light most favorable to Plaintiff—as required by law—evidence has been presented that would provide a reasonable jury with a legally sufficient evidentiary basis for determining that the Plaintiff has met all the elements of negligence.  *See Mulholland*, 706 F.3d at 237 n.14.  Defendant has failed to demonstrate that there was "no question of material fact for the jury."  *See id.*  Rather, the testimony and other evidence presented at trial required the jury to make credibility determinations, as is the province of the jury.  *See Ambrose*, 303 F.3d at 492; *Murphy*, 2011 WL 3652480 at *2.  In considering a Rule 50 motion for judgment as a matter of law, it is not the Court's function to "weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version."  *Ambrose*, 303 F.3d at 492; *see also Murphy*, 2011 WL 3652480 at *2.

Given the evidence presented at trial, Defendant has failed to demonstrate that "the record is 'critically deficient of the minimum quantum of evidence' upon which a jury could reasonably base its verdict."  *See Pitts*, 646 F.3d at 155 (quoting *Acumed LLC*, 561 F.3d at 211).  Accordingly, Defendant's Renewed Motion for Judgment as a Matter of Law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, will be denied.  *See* Fed. R. Civ. P. 50(b); *see also Ambrose*, 303 F.3d at 492.

**B.      Rule 59(a):  Motion for a New Trial or Remittitur**

Defendant also argues that a new trial should be granted pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, because the jury's verdict—finding Betteroads liable for Simpson's injury—is unconscionable.  (*See* Dkt. No. 94 at 4).  Defendant maintains that the verdict finding it liable cannot stand because (1) Betteroads was not negligent; (2) Betteroads retained no control over the work performed by NR Electric; and (3) Simpson "was suffering from a pre-existing condition unrelated to his alleged work-related injury.  (*Id.*).  Defendant further argues that the jury's award of damages was "grossly excessive," and that "the preponderance is so heavily against the verdict that no reasonable jury could have reached that result." (*Id.* at 16–18).

A new trial should be granted when the jury's "verdict is contrary to the great weight of the evidence, thus making a new trial necessary to prevent a miscarriage of justice."  *Id.* at 736; *see also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999) ("New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."); *Steward v. Sears Roebuck & Co.*, 231 F. App'x 201, 214 (3d Cir. 2007).

Elaborating on the "shocked conscience" standard, the Third Circuit has held that for a jury's verdict to necessitate a new trial, the verdict must be "be so unreasonable as to offend the conscience of the court."  *Virgin Island Mar. Serv., Inc. v. Puerto Rico Mar. Shipping Auth.*, 978 F. Supp. 637, 648 (D.V.I. 1997), *aff'd*, 162 F.3d 1153 (3d Cir. 1998) (quoting *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979)).  "[T]he purpose of [the miscarriage-of-justice] rule is to ensure that the trial court does not supplant the jury verdict with its own

17

interpretation of the facts." *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 290 (3d Cir. 1993).  A jury's verdict should be subject to less scrutiny when the subject matter is simple and easily comprehended by intelligent jurors, and more scrutiny when the trial is long and complicated and deals with specialized subject matter.  *Henry v. Hess Oil Virgin Islands Corp.*, 163 F.R.D. 237, 242 (D.V.I. 1995) (citing *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960)).

Here, based on the evidence presented at trial and summarized above, the Court cannot say that the jury's verdict regarding Defendant's liability is "contrary to the great weight of the evidence."   *See Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir. 1988).  The Court acknowledges that Defendant presented evidence and testimony that supported its version of the facts with respect to each element of negligence, as described in the preceding discussion. However, Plaintiff also presented testimony and other evidence supporting his account of the facts.  The two competing narratives required the jury to make credibility determinations as to which version of the facts it believed.  The trial was not "long and complicated," and it did not "deal[] with a subject matter not lying within the ordinary knowledge of jurors."  *See Henry*, 163 F.R.D. at 242.  Rather, the subject matter of the trial—whether Simpson injured his back when his compacting machine allegedly struck a rock—was "simple and easily comprehended by intelligent laymen."  *See id.*  Therefore, the jury's verdict is subject to "less demanding scrutiny." *See id.*  The Court cannot "supplant the jury verdict with its own interpretation of the facts."  *See Olefins Trading*, 9 F.3d at 290.  Based on the evidence presented at trial, the Court does not find that the jury's verdict on Defendant's liability is "contrary to the great weight of the evidence" and that a new trial on liability is "necessary to prevent a miscarriage of justice."  *See Roebuck*, 852 F.2d at 735.  Accordingly, the Court will not grant a new trial on the issue of Defendant's

liability.

However, in a section of its Motion titled "Excessive and Improper Damage Award," Defendant also argues that the jury's award of damages was "grossly excessive," and that "the preponderance is so heavily against the verdict that no reasonable jury could have reached that result." (*Id.* at 16–18). In that section, Defendant cites cases for the proposition that courts may evaluate the evidence, assess whether the jury verdict is rationally based, and reverse awards that are grossly excessive. (*Id.* at 16–17).[3] Indeed, in considering remittitur, a district court may exercise its discretion to reduce the jury's award of damages. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 354 (3d Cir. 2001); *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 772 (3d Cir. 1987) ("'[A] district court should be alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds.'") (quoting *Walters v. Mintec/Int'l*, 758 F.2d 73 (3d Cir. 1985)); *Smith*, 2013 WL 1182074 at *2.

In evaluating whether remittitur is appropriate, a court must "evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion." *Spence v. Bd. of Educ.*, 806 F.2d 1198, 1201 (3d Cir. 1986); *see also Evans*, 273 F.3d at 354 ("[T]he issue to be decided here 'is not the size of the award alone, but the evidence supporting the award.'") (quoting *Blakey v. Continental Airlines, Inc.*, 992 F.Supp. 731, 737 (D.N.J. 1998)); *see also Smith*, 2013 WL 1182074 at *2. A trial court may not order remittitur simply because

---

[3] In his Opposition, Plaintiff responds to Defendant's argument on this issue in a section titled "The Size of the Verdict." (Dkt. No. 92 at 9–10). In that section, Plaintiff argues that the jury's assessment of approximately $670,000.00 in damages for pain, suffering, and loss of enjoyment of life "is neither shocking nor a miscarriage of justice." (*Id.*). Plaintiff cites five cases, dating from 1968 through 1987, as support for upholding significant damages for pain and suffering. (*Id.*). Plaintiff argues that "[t]he jury's assessment of Simpson's damages surely considered the stark fact that this 38 year old person has a back that is held together with metal screws and a metal cage inserted into his back to hold everything in place." (*Id.* at 10). Plaintiff further argues that "[t]here can be no doubt pain is present together with daily apprehension that some misstep or accident will undo all that he has suffered." (*Id.*).

the court "believes the jury to be unduly generous." *See Henry*, 163 F.R.D. at 243 (citing *Dunn v. HOVIC*, 1 F.3d 1362, 1367 (3d Cir. 1993)).  Instead, remittitur is appropriate when the court finds that there was no rational basis for awarding such a sum.  *See id.*; *see also Gumbs*, 823 F.2d at 773.  A jury's award should be reduced when it is "'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995) (quoting *Spence*, 806 F.2d at 1201).  A court may not reduce a jury's award to the amount the court would have chosen itself; rather, a court may only apply remittitur to reduce an award to an amount that no longer shocks the court's conscience.  *See Gumbs*, 823 F.2d at 772 ("[A] trial court fixing a remittitur may not reduce the award to less than the largest verdict that could be allowed without requiring a new trial. . . .  Only a reduction to the *maximum* amount 'which the jury *could* reasonably find' has any reasonable claim of being consistent with the Seventh Amendment.") (emphasis in original) (citing *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033, 1046–47 (5th Cir. 1970)).  "The determination of that amount may not be precisely calculated." *Id.* at 774.

Based on the evidence presented at trial, the jury was instructed that an award of damages to Plaintiff could include compensatory damages for past medical expenses, pain, suffering, and loss of enjoyment of life. (*See* Jury Instructions, Dkt. No. 85 at 16).[4]  With the exception of past medical expenses and income benefits awarded to Plaintiff by the Workers' Compensation Administration, Plaintiff presented no other evidence of economic damages at trial. (*See* Pl. Exh. 1 at 1).  To establish these expenses, Plaintiff presented evidence of a $234,166.23 Workers' Compensation lien, of which a sum of $194,639.85 was for "medical expenditures," a sum of

---

[4] The jury was further instructed that damages could not include punitive damages, court costs, or attorney's fees. (*See id.*).

$30,400.38 was for "disability income benefits," and a sum of $9,126.00 was for "schedule income benefits." (*See* Pl. Exh. 1 at 1; Dkt. No. 90 at 15; Dkt. No. 92 at 9).[5]  Because the total award was $900,000.00, and Plaintiff did not present any other evidence of medical expenditures or other economic damages beyond the Workers' Compensation expenditures of $234,166.23, at least $665,833.77 of the jury's award to Plaintiff constituted compensatory damages for pain, suffering, and loss of enjoyment of life.  (*See, e.g.*, Dkt. No. 92 at 9).

While the jury was not obligated to find that the Workers' Compensation lien of $234,166.23 established that Plaintiff's economic losses consisted of medical expenses and income losses totaling that amount—and although the jury's award did not include an itemized finding of medical expenses, and did not distinguish between economic and non-economic damages—the Court cannot say that the portion of the award equaling $234,166.23 was "'clearly unsupported' by the evidence" or "exceeds the amount needed to make the plaintiff whole."  *See Starceski*, 54 F.3d at 1100.   Therefore, the Court turns to evaluate whether remittitur is appropriate with respect to the remaining $665,833.77 of the jury's award, which corresponds to non-economic compensatory damages for pain, suffering, and loss of enjoyment of life.

In making this determination, the Court compares the jury's award to awards for similar injuries.  *See Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir. 2002) ("A mainstay of the excessiveness determination is comparison to awards for similar injuries."); *Smith*, 2013 WL 1182074 at *14.  For example, in a case in which the plaintiff injured his back by falling from

---

[5] At trial, Defendant argued that this lien should not be considered as evidence of Plaintiff's medical expenses.  (*See, e.g.*, Dkt. No. 90 at 15).  In support of its position, Defendant argued that the determination of the Workers' Compensation evaluator was not based on sufficient evidence showing that the medical treatment was needed due to a work-related injury.  (*See id.*).  However, the Court finds that this evidence was sufficient for a jury to reasonably conclude that Plaintiff's economic damages amounted to $234,166.23, including $194,639.85 in medical expenses.  (*See* Plaintiff's Exh. 1 at 1).

the roof of a building, the Third Circuit evaluated the propriety of the jury's award of $317,000

for the plaintiff's pain and suffering.  *See Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d

1030, 1039 (3d Cir. 1987).  The plaintiff in that case, Vance Williams, was 38 years old at the

time of the accident, and did not undergo surgery.  *Id.* at 1037, 1040.  He testified that he still has

pain in his lower back; that his back hurts if he stands up and stretches, or walks, or sits for a

long period of time; that he cannot sit through a whole movie; and that he can no longer dance.

*Id.* at 1040.  On the basis of the record, the Third Circuit concluded that "the award of the jury of

more than $300,000 for pain and suffering was excessive."  *Id.*

In another Third Circuit case, *Gumbs v. Pueblo Int'l, Inc.*, the injured plaintiff, Celia

Gumbs, slipped and fell on oil that was on the floor of a supermarket owned by the defendant,

Pueblo International, Inc.  *Gumbs*, 823 F.2d at 769.  At trial, the plaintiff's treating physician

testified that "as a result of the accident she had sprained her coccyx, experienced abdominal and

vaginal pain, had a back spasm, and may require surgery at some point."  *Id.*  Gumbs testified

that after the accident, she "found sexual relations too painful for her," "had difficulty

performing household chores," could no longer engage in outdoor activities or dancing, and had

difficulty playing with her children.  *Id.*  However, "Gumbs was not hospitalized nor did she

miss even a day of work."  *Id.* Moreover, "[d]espite her injury, she climbed twenty-five steps to

her office twice every working day."  *Id.*  "The jury awarded Gumbs $900,000 for past and

future pain and suffering, mental anguish, and loss of enjoyment of life."  *Id.*  Finding the jury's

award to be shocking to its conscience, the district court reduced the jury's award from $900,000

to $575,000.  *Id.* at 769–70.  On appeal, the Third Circuit further reduced the award for pain and

suffering, mental anguish, and loss of enjoyment of life from $575,000 to $235,000.  *Id.* at 775

("Upon a careful review of the record and the law relating to analogous injuries, we believe that

the maximum recovery without shocking the judicial conscience that a jury reasonably could have awarded the plaintiff for pain and suffering, mental anguish, and loss of enjoyment of life would have been $235,000.").

In *Maylie v. Nat'l R.R. Passenger Corp.*, 791 F.Supp. 477 (E.D. Pa. 1992), *aff'd*, 983 F.2d 1051 (3d Cir. 1992), the plaintiff, Robert Maylie, Jr., fell and injured his back while lifting a large metal drum to empty it into a dumpster while working for the defendant.  *Id.* at 479. Maylie was hospitalized three times, including two surgeries, and experienced "episodes of pain so severe that he was unable to sleep and was unable to relieve the pain by either sitting, standing, or lying down."  *Id.* at 483–84.  However, the district court nonetheless found the jury's award of $2 million for pain and suffering to be "'so grossly excessive as to shock the judicial conscience.'"  *Id.* at 484 (quoting *Gumbs*, 823 F.2d at 771).  Accordingly, the court reduced Maylie's damages for pain and suffering from $2 million to $550,000.  *Id.*

In *Graziani v. Star C. Trucking, Inc.*, Civ. No. 94–7124, 1996 WL 79975 (E.D. Pa. Feb. 22, 1996), *aff'd*, 103 F.3d 112 (3d Cir. 1996), plaintiff Deborah Graziani suffered neck and back injuries in a car crash.  *See id.* at *1.  One of her treating physicians testified that Graziani has a chronic cervical sprain and a lumbar sprain, as well as a degenerated disc.  *Id.* at *4–*6. Graziani testified that although "her pain-killing and muscle-relaxing medications enable her to function almost normally," "she could not push a vacuum cleaner, walk for more than 15–20 minutes, bend from the waist or squat without frequent pain, or carry heavy grocery bags."  *Id.* at *4.  She further testified that her injuries caused her to become irritable and depressed, and caused her and her husband to separate after 18 years of marriage and two children.  *Id.* at *5. After reviewing the evidence in the case, and comparing the facts to other cases and awards, the district court found the jury's award of $600,000 for pain and suffering to be "grossly

excessive," and thus reduced the award to $375,000.  *Id.* at *7.

In *Baucom v. Sisco Stevedoring, LLC*, 560 F. Supp. 2d 1181, 1188 (S.D. Ala. 2008), the plaintiff, Robert Baucom, suffered back injuries while working on a crane barge.  *Id.* at 1185.  As Baucom was attempting to free a twisted cable, the cable came loose and "violently pulled Baucom down to his knees on the catwalk."  *Id.* at 1188.  He "knew immediately that his back was hurt, but initially thought that it was merely a muscle strain."  *Id.* at 1189.  However, that night, Baucom was unable to sleep due to "significant back pain," and later "felt a pop in his back" as he climbed a ladder during his next shift.  *Id.*  He tried to work for five minutes "before realizing that his back pain was simply too excruciating to allow him to continue working."  *Id.* His supervisor observed that Baucom was in obvious pain, and drove him to the hospital.  *Id.* at 1189–90.

Baucom had not experienced significant back injuries or back pain prior to the accident. *Id.* at 1191.  After the accident, however, he was diagnosed with "lumbar back pain, lumbar spine strain, degenerative disc disease, and herniated discs."  *Id.*  Although Baucom had a pre-existing degenerative disc condition, the parties did not identify any medical evidence or other facts showing that this condition caused him any problems prior to the accident.  *Id.* at 1191 n.17.  At the time of trial, he remained unable to work and endured "substantial back pain on a daily basis," which intensifies with increased levels of activity.  *Id.* at 1194.  He also suffered periodic episodes in which the back pain completely incapacitated him until the pain subsided. *Id.*  In *Baucom*, following a non-jury trial, the district court judge found that an appropriate award for pain and suffering was $125,000 (of which $85,000 was allocated for past pain and suffering, and $40,000 was allocated for future pain and suffering).  *Id.* at 1206.

The Court acknowledges that "[w]hereas damages for lost wages are susceptible to a

level of mathematical precision, there is no market for pain and suffering to which the jury may turn for assistance in determining how much a plaintiff is entitled to recover." *Maylie*, 791 F. Supp. at 482.  However, the awards given in the cases described above provide some context and a basis for comparison when evaluating the appropriate amount of damages for pain, suffering, and loss of enjoyment of life in the instant matter.  *See id.* ("In considering whether an award of damages is excessive, a court need not ignore awards that have been made in other cases involving similar injuries."); *see also id.* at 483 ("In other cases involving non-paralytic back injuries, courts have set maximum reasonable pain and suffering awards at amounts ranging from $100,000 to approximately $285,000, based on the circumstances involved in each case.").

Here, in support of a large award for pain and suffering, Plaintiff presented medical records and testimony detailing his symptoms, diagnosis, and treatment—including surgery—for his back injury.  (*See, e.g.*, Pl. Exh. 4, 6).  Plaintiff himself testified as to his pain and weakness. Additionally, Plaintiff's fiancée, Rachel Winslow, testified that there are days when Mr. Simpson is very uncomfortable, and other days when he is not.  According to Ms. Winslow, Mr. Simpson cannot get out of bed some days, and he cannot be as active in his daily life as they would like him to be.

Militating against a large award for pain and suffering, however, there was evidence presented at trial which indicated that some portion of Plaintiff's pain and suffering was attributable to a pre-existing condition.  Dr. Pedersen, as an orthopedic surgeon who treated and evaluated Plaintiff, testified that when he reviewed Mr. Simpson's MRI and x-rays, he was struck by the fact that Simpson had "far-advanced degenerative problems with his back, though he was only 35 years old" at the time.  Dr. Pedersen noted that Simpson's work involved hard manual labor, and that he had the "lower back of someone more like 70-to-75-years old."

According to Dr. Pedersen, this degenerative damage was the result of long-term damage and not the alleged injury at issue in this case.   Dr. Pedersen prepared and signed a Workmen's Compensation Surgeon's Report, which stated that Simpson had "[a]dvanced degeneration of the lower lumbar discs," which was a "phy[si]cal] impairment due to [a] previous accident or disease."  (Def. Exh. 10 at 1).   C.P. Shah, M.D., a radiologist, prepared a report—based on radiographs showing four views of Simpson's lumbar spine—stating that losses of Simpson's disc height were observed "in association with degenerative disc disease."  (Def. Exh. 13 at 1). Defendant also presented the testimony of Jomar Encarnación, who worked with Plaintiff at NR Electric.  Mr. Encarnación testified that prior to the alleged injury, Plaintiff complained about his back and wore a back brace.

Carefully considering the evidence presented at trial, and comparing the instant case to the other cases described above, the Court finds that the $665,833.77 awarded by the jury for pain, suffering, and loss of enjoyment of life is "'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole." *See Starceski*, 54 F.3d at 1100.  For that reason, the Court will remit the award for pain, suffering, and loss of enjoyment of life.  *See Gasperini*, 518 U.S. at 433.   Based on the evidence presented at trial and the awards in comparable cases, the Court finds that the portion of the jury's award in excess of $325,000.00 for pain, suffering, and loss of enjoyment of life shocks the Court's conscience; $325,000.00 is the "the *maximum* amount 'which the jury *could* reasonably find.'"  *See Gumbs*, 823 F.2d at 772.

Accordingly, the Court will order a new trial on the issue of damages unless Plaintiff remits $340,833.77 of the jury's award of $900,000.00 and accepts a total judgment in the amount of $559,166.23.[6]

---

[6] Remittitur may properly be ordered only on a conditional basis.  *See Cortez v. Trans Union,*

## IV. CONCLUSION

Because evidence was presented at trial that would provide a jury with a legally sufficient evidentiary basis for reasonably determining that Plaintiff met all the elements of negligence, Defendant's Motion will be denied to the extent that it seeks judgment as a matter of law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 50(b).

For the reasons described above, the Court also finds that the jury's verdict regarding Defendant's liability is not "contrary to the great weight of the evidence," and thus a new trial will not be granted on the issue of Defendant's liability pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.  *See Roebuck*, 852 F.2d at 736.  However, the Court finds that the jury's award for pain, suffering, and loss of enjoyment of life in excess of $325,000.00 is "'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole."  *See Starceski*, 54 F.3d at 1100.

Accordingly, the Court will order a new trial on the issue of damages unless Plaintiff remits $340,833.77 of the jury's award of $900,000.00 and accepts a total judgment in the amount of $559,166.23.

---

*LLC*, 617 F.3d 688, 716 (3d Cir. 2010) (noting that when a court "exercises its discretion [to order remittitur] because it believes the amount of the award is inconsistent with the evidence in a case," such an order "is conditional, and the court must offer a new trial as an alternative to a reduction in the award in order to avoid depriving the plaintiff of his/her Seventh Amendment right to a jury trial"); *C & C Const. & Maint., Inc. v. Nales-Martinez*, Civ. No. 2002–093, 2011 WL 2784132 at *6 (D.V.I. July 15, 2011) ("Because a remittitur requires a trial judge to substitute a jury's judgment for her own, a remittitur invariably raises concerns regarding a litigant's Seventh Amendment right to have his case decided by a jury in its entirety.  To avoid triggering Seventh Amendment concerns, the remittitur is traditionally accompanied by offering the verdict-winner the choice of a new trial.").  Therefore, a court applying remittitur must offer the plaintiff a choice between a reduced award and a new trial.  *See C & C Const.*, 2011 WL 2784132 at *7 (noting "the time-honored practice of the conditional remittitur as a tool designed to give the plaintiff a choice between a reduced award or a new trial where, 'the prerequisites to recovery have been firmly established, but the trial judge has determined that the damage award is "just too much"'") (quoting *Spence*, 806 F.2d at 1206 (emphasis added)).

An appropriate Order accompanies this Memorandum Opinion.

Date:  September 18, 2013                    _____/s/_____
                                             WILMA A. LEWIS
                                             Chief Judge